IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

| | |
|---|---|
| JOHN FIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 19-2458 |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| PEAK RESORTS, INC., TIMOTHY D. BOYD, STEPHEN J. MUELLER, RICHARD K. DEUTSCH, STANLEY W. HANSEN, CARL E. KRAUS, CHRISTOPHER S. O'CONNOR, DAVID W. BRASWELL, and RORY A. HELD, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff John Field ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action is brought by Plaintiff against Peak Resorts, Inc. ("Peak Resorts" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction pursuant to which Peak Resorts will be acquired by Vail Resorts, Inc. ("Vail

1

Resorts") through Vail Holdings, Inc. ("Parent") and Parent's wholly owned subsidiary, VRAD Holdings, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On July 22, 2019, Peak Resorts issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Vail Resorts dated July 20, 2019. Pursuant to the terms of the Merger Agreement, each Peak Resorts stockholder will be entitled to receive $11.00 in cash for each share of Peak Resorts common stock they own. The Proposed Transaction has an enterprise value of approximately $463.60 million.

3. Additionally, each share of Series A Cumulative Convertible Preferred Stock of the Company ("Series A Preferred Stock") will be converted into the right to receive an amount equal to the sum of: (i) $1,748.81; plus (ii) the aggregate amount of all accrued and unpaid dividends on the applicable issuance of Series A Preferred Stock as of the close of the Proposed Transaction. Further, each warrant to purchase shares of common stock (the "Warrants") that is issued and outstanding will be converted into the right to receive an amount in cash equal to the product of: (i) the aggregate number of shares of common stock in respect of such Warrant; multiplied by (ii) the excess of $11.00 over the per share exercise price under such Warrant. Cap 1 LLC ("Cap 1"), an affiliate of a director of the Company, Rory Held ("Held"), owns all 40,000 shares of Series A Preferred Stock and all the Warrants of the Company.[1]

4. On August 20, 2019, Peak Resorts filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC in connection with the Proposed Transaction. The Proxy Statement, which recommends that Peak Resorts stockholders vote in

---

[1] Cap 1 is also a lender under a $50.0 million term loan to the Company pursuant to a Credit Agreement dated November 21, 2018 (the "Credit Agreement"). Vail Resorts will be assuming, paying off or refinancing the Company's outstanding debt, including the obligations owed to Cap 1 under the Credit Agreement.

2

favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the valuation analyses prepared by the Company's financial advisor Moelis & Company LLC ("Moelis") in connection with the rendering of its fairness opinion; and (ii) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as Peak Resorts stockholders need such information to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction.

5. In short, unless remedied, Peak Resorts' public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's

claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Peak Resorts is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Peak Resorts.

10. Peak Resorts is a Missouri corporation and maintains its principal executive offices at 17409 Hidden Valley Drive, Wildwood, Missouri 63025. Peak Resorts is a leading owner and operator of high-quality, individually branded ski resorts in the U.S. The Company's common stock is traded on the Nasdaq Global Market under the ticker symbol "SKIS."

11. Defendant Timothy D. Boyd ("Boyd") has served as Chief Executive Officer ("CEO"), President, Chairman of the Board and a director of the Company since the Company's inception in 1997.

12. Defendant Stephen J. Mueller ("Mueller") is Executive Vice President and has served as a director of the Company since 2001. Defendant Mueller previously served as the Company's Chief Financial Officer, Vice President and Secretary from 2001 until October 3, 2017.

13. Defendant Richard K. Deutsch ("Deutsch") has served as a director of the Company since approximately 2002.

14. Defendant Stanley W. Hansen ("Hansen") has served as a director of the

Company since 2014.

15. Defendant Carl E. Kraus ("Kraus") has served as a director of the Company since 2014.

16. Defendant Christopher S. O'Connor ("O'Connor") has served as a director of the Company since 2014.

17. Defendant David W. Braswell ("Braswell") has served as a director of the Company since 2016.

18. Defendant Held has served as a director of the Company since 2017. Cap 1, the Company's largest outstanding stockholder, is an affiliate of defendant Held and nominated defendant Held to the Board pursuant to the terms of the Stockholders' Agreement between the Company and Cap 1.

19. Defendants referenced in paragraphs 11 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Vail Resorts is a Delaware corporation with its principal executive offices located at 390 Interlocken Crescent, Broomfield, Colorado 80021. Through its subsidiaries, Vail Resorts operates world-class mountain resorts, urban ski areas, and owns and/or manages a collection of hotels. Vail Resorts' common stock is traded on the New York Stock Exchange under the ticker symbol "MTN."

21. Parent is a Colorado corporation and a direct wholly owned subsidiary of Vail Resorts.

22. Merger Sub is a Missouri corporation and a direct wholly owned subsidiary of Parent.

23. Cap 1 and its affiliates collectively hold 54.12% of Peak Resorts' common stock, including shares of Peak Resorts common stock issuable upon conversion of the Series A Preferred Stock and exercise of the Warrants, both of which are held by Cap 1 in their entirety. Cap 1 is also a lender to the Company.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

24. Peak Resorts is a leading owner and operator of high-quality, individually branded ski resorts in the U.S.  The Company currently operates 17 ski resorts primarily located in the Northeast, Mid-Atlantic and Midwest U.S., 16 of which the Company owns.  The majority of the resorts are located within 100 miles of major metropolitan areas enabling day and overnight drive accessibility.  Collectively, the Company's resorts are comprised of more than 2,300 acres of skiable terrain that appeal to a wide range of ages and abilities.  The Company offers a wide range of activities, services and amenities, including skiing, snowboarding, terrain parks, tubing, dining, lodging, equipment rentals and sales, ski and snowboard instruction and mountain biking, zip tours, golf, and other summer activities.  Combined, the Company's resorts generated approximately 2.4 million ski and tubing visits in the 2018/2019 ski season.

25. On March 13, 2019, Peak Resorts reported its financial results for its fiscal 2019 third quarter.  For the quarter, Peak Resorts reported revenue of $84.0 million, compared to $59.3 million for the third quarter of fiscal year 2018.  Net income for the quarter increased to

$13.6 million, or $0.66 per diluted share, compared to $9.2 million, or $0.53 per diluted share for the third quarter of fiscal year 2018. Defendant Boyd commented on the results, stating:

> We are pleased with our fiscal 2019 third quarter financial results and our good start to the 2018-19 ski season, given variable weather patterns and at times challenging conditions across the Northeast and Midwest. By combining our healthy organic growth with the addition of the three Snow Time resorts to our operating base beginning in late November, as well as our ongoing efforts to diligently manage expenses, Peak Resorts was able to overcome these challenges and generate revenue, net income and Reported EBITDA growth of 42%, 48% and 46% in the fiscal 2019 third quarter, respectively.

26. On June 27, 2019, Peak Resorts reported its fiscal 2019 fourth quarter and full year financial results. For the quarter, Peak Resorts reported revenue of $85.5 million, compared to $56.0 million for the fourth quarter of 2018. Net income for the quarter increased to $18.1 million, or $0.83 per diluted share, compared to $9.7 million, or $0.56 per diluted share, for the fiscal 2018 fourth quarter. Defendant Boyd highlighted the Company's financial results, stating:

> Fiscal 2019 was a record year for Peak Resorts as we completed several transformational initiatives that drove robust year over year growth. We generated record revenue and Reported EBITDA of $184.4 million and $49.8 million, respectively, thanks to our successful Snow Time acquisition and the fantastic execution of our resort operating teams who provided our guests with great conditions throughout a season of variable weather. We also delivered double-digit growth across our season pass offerings, saw continued strength across key revenue streams including food and beverage, ski school and retail, and benefited from our geographic and market diversification and ongoing customer outreach initiatives.

Underscoring Peak Resorts' outlook for future growth, defendant Boyd continued, "[w]ith a strong finish to the 2018-19 season and strong season pass sales for the upcoming 2019-20 season, Peak Resorts is positioned for further growth in fiscal 2020."

**The Proposed Transaction**

27. On July 20, 2019, the Company and Vail Resorts executed the Merger Agreement.

28. On July 22, 2019, Peak Resorts issued a press release announcing the Proposed Transaction, which stated, in relevant part:

> WILDWOOD, Mo., July 22, 2019 (GLOBE NEWSWIRE) -- Peak Resorts, Inc. (NASDAQ:SKIS) ("Peak Resorts" or the "Company"), a leading owner and operator of high-quality, individually branded U.S. ski resorts, today announced that it has entered into a definitive merger agreement with Vail Resorts, Inc. (NYSE: MTN) ("Vail Resorts") pursuant to which Vail Resorts will acquire all outstanding shares of common stock of Peak Resorts for $11.00 per share in cash. The transaction represents a 116% premium to Peak Resorts' closing stock price on July 19, 2019. The transaction is expected to close in fall 2019 and is subject to certain conditions, including a vote of Peak Resorts shareholders and antitrust clearance.
>
> "For over 22 years, our team has worked tirelessly to create what is one of the country's premier ski resort companies, with 17 properties across the Northeast, Mid-Atlantic and Midwest. We are now delighted to announce this agreement with Vail Resorts that creates substantial value for our shareholders and new opportunities for our guests," said Timothy D. Boyd, President and Chief Executive Officer of Peak Resorts. "During my time in the industry, I've come to know and respect Vail Resorts and believe they will build on our accomplishments and further improve the experience that our loyal guests enjoy both on and off the mountain.
>
> "An important driver of our success is the Peak Pass, the leading season pass option for Northeast skiers and riders. With a growing number of customers taking advantage of unlimited access to resorts such as Mount Snow and Hunter Mountain, the Peak Pass has become a valuable asset. Our properties are also in excellent condition thanks to a number of recently completed capital projects, including upgrades to our snowmaking capabilities, terrain expansions and infrastructure improvements. Going forward under Vail Resorts' leadership, we expect guests will see a continued focus on the customer experience that will further the appeal and growth of our resorts and the strong affinity of our guests. Furthermore, I believe our extremely capable team will become an integral part of the long-term Vail Resorts success as they represent a tremendous asset to our guests and to our resorts."

Rob Katz, Chairman and Chief Executive Officer of Vail Resorts, added, "We are incredibly excited to have the opportunity to add such a powerful network of ski areas to our company. Peak Resorts' ski areas in the Northeast are a perfect complement to our existing resorts and together will provide a very compelling offering to our guests in New York and Boston. With this acquisition, we're also able to make a much stronger connection to guests in critical cities in the Mid-Atlantic and Midwest, and build on the success we have already seen with our strategy in Chicago, Minneapolis and Detroit. Tim and his team have assembled a fantastic array of resorts and created a strong and loyal guest network. We look forward to welcoming Peak Resorts' guests and team members to the Vail Resorts family."

**Insiders' Interests in the Proposed Transaction**

29. Peak Resorts insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Peak Resorts.

30. Notably, Peak Resorts insiders stand to reap substantial financial benefits for securing the deal with Vail Resorts. Pursuant to the Merger Agreement, all outstanding restricted stock units ("RSUs") will vest and convert into the right to receive cash payments. The following table summarizes the value of the RSUs Company insiders stand to receive:

| Name | Number of Vested/Unsettled and Unvested RSUs (#) | Aggregate Value ($)[1] |
|---|---|---|
| **Executive Officers/Key Employee** | | |
| Timothy D. Boyd | 19,011 | $ 209,121 |
| Christopher J. Bub | 30,962 | $ 340,582 |
| Richard K. Deutsch | 14,313 | $ 157,443 |
| Stephen J. Mueller | 6,882 | $ 75,702 |
| **Non-Employee Directors** | | |
| Stanley W. Hansen | 43,636 | $ 479,996 |
| Carl E. Kraus | 43,636 | $ 479,996 |
| Christopher S. O'Connor | 43,636 | $ 479,996 |
| David W. Braswell | 30,298 | $ 333,278 |
| Rory A. Held[2] | — | — |
| | 232,374 | $2,556,114 |

31. Moreover, if they are terminated in connection with the Proposed Transaction, Peak Resorts' named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Salary Continuation ($) | Additional Bonus Payment ($)[1] | Annual Incentive Plan ($)[2] | Market Value of Equity with Accelerated Vesting ($)[3] | Continued Perquisites and Benefits ($)[4] | Total ($) |
|---|---|---|---|---|---|---|
| Timothy D. Boyd[5] | 884,000[6] | 66,300 | 67,025 | 209,121 | 16,560 | 1,243,006 |
| Richard K. Deutsch[5] | 832,000[6] | 49,920 | 50,466 | 157,443 | 16,560 | 1,106,389 |
| Christopher J. Bub[5] | 500,000[6] | 26,250 | 26,537 | 340,582 | 15,204 | 908,573 |
| Stephen J. Mueller[5] | 500,000[7] | 27,000 | 24,262 | 75,702 | 16,560 | 643,524 |

**The Proxy Statement Contains Material Misstatements and Omissions**

32. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Peak Resorts' stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

10

33. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the valuation analyses prepared by the Company's financial advisor Moelis in connection with the rendering of its fairness opinion; and (ii) Company insiders' potential conflicts of interest. Accordingly, Peak Resorts stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Moelis' Financial Analyses*

34. The Proxy Statement describes Moelis' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Moelis' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Peak Resorts' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Moelis' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Peak Resorts' stockholders.

35. With respect to Moelis' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and the assumptions underlying the discount rate range of 12.8% to 16.2%; (ii) the terminal values for the Company; (iii) quantification of Company management's estimates for stock-based compensation, which Moelis treated as a cash expense for purposes of its analysis; and (iv) the implied terminal multiples resulting from the analysis.

36. With respect to Moelis' *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to quantify the Company's stock-based compensation, which Moelis treated as a cash expense for purposes of its analyses.

37. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. The omission of this information renders the statements in the "Opinion of Moelis & Company LLC" and "Management Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

39. The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Peak Resorts insiders.

40. In the July 22, 2019 press release announcing the Proposed Transaction, defendant Boyd is quoted as stating, "I believe our extremely capable team will become an integral part of the long-term Vail Resorts success as they represent a tremendous asset to our guests and to our resorts." In addition, the press release quoted Rob Katz, Chairman and CEO of Vail Resorts, as stating, "We look forward to welcoming Peak Resorts' guests and team members to the Vail Resorts family."

Yet, the Proxy Statement fails to disclose whether any members of Peak Resorts management are continuing with the combined company, and the details of any employment and retention-related discussions and negotiations that occurred between Vail Resorts and Peak Resorts' executive officers, including who participated in all such communications, when they

12

occurred and their content. The Proxy Statement further fails to disclose whether any of Vail Resorts' prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

41. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. The omission of this information renders the statements in the "Background of the Merger" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Peak Resorts will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. The Proxy Statement misrepresented and/or omitted material facts, including material information about the valuation analyses prepared by the Company's financial advisor Moelis in connection with the rendering of its fairness opinion and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Peak Resorts within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Peak Resorts and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities

violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Peak Resorts stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 29, 2019

            By: /s/ Matthew L. Dameron
               Matthew L. Dameron
               **WILLIAMS DIRKS DAMERON LLC**
               1100 Main, Suite 2600
               Kansas City, Missouri 64105
               Tel: (816) 945-7110
               Fax: (816) 945-7118

               *Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010